## GLENDY BURKE v. HIS CREDITORS—on a rule taken by GERNON.

It is inequitable to decree a specific performance where the intention of the parties is doubtful. A Court is not permitted to make such a decree on conjecture; and where it finds no certain contract it has no right to frame one for the parties *ex equo et bono.*

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.   *Elmore & King,* for plaintiff and appellant.   *Walker & DeFrance,* for defendant.

SLIDELL, C. J.   At an auction sale of property of the insolvent, it- was   BURKE
knocked down to *Michael Gernon ;* but the syndic and purchaser disagreeing   *v.*
as to the amount to be paid, the matter was submitted to the Court, under a   HIS CREDITORS.
rule taken by the purchaser upon the syndic, to show cause why he should not
execute a deed in conformity to the terms of the sale, as understood by the
purchaser.   In his answer, the syndic states his understanding of the terms.
The District Judge thought the advertisement obscure: and without adopt-
ing the construction of either party, dismissed the rule.   *Gernon* has ap-
pealed.

It would seem that this sale grew out of previous proceedings, which we had
recently occasion to consider; and we had supposed, at the time of argument,
that those proceedings would throw some light upon the present controversy,
and facilitate its decision.   But on examining the record in this cause, we
find that none of those previous proceedings are in evidence.   The case is pre-
sented merely upon the advertisement which preceded the sale now in ques-
tion; the *proces verbal* of the auctioneer; the act of sale from the State of
Louisiana to *Glendy Burke ;* certain letters which have passed between the
syndic and purchaser ; and the projêt of a deed of sale offered by the former
to the latter.

With reference to this evidence, we proceed to consider the right of the par-
ties.

The terms are thus stated in the advertisement:—" Terms of sale of the
above property on a credit of 6, 12, 18 and 24 months, with mortgage on the
property; and the purchaser to assume the following mortgage due the State
of Louisiana: Firstly—A certain promissory note subscribed by him, the said
*Glendy Burke*, dated 16th of May, 1850, to the order of himself and endorsed
by said *Glendy Burke*, payable on the 21st of March, 1872, at the office of the
Treasurer of the State of Louisiana, for the sum of $6,213 98.

Secondly—Forty-two separate notes, dated, subscribed, and endorsed in like
manner, for the sum of $155 35 each, payable respectively at the Louisiana
State Bank, in the city of New Orleans, on the 1st day of December, and the
1st day of June of each and every year, until the 1st day of December, 1871,
amounting together to $6,524 70, being for interest on the note firstly des-
cribed.

Thirdly—One note dated, subscribed, and endorsed in like manner, and pay-
able on the 21st of March, 1872, at the Louisiana State Bank, in the city of
New Orleans, for the sum of $94 94, being also for interest on the note first
described.

All the above notes, in case of non-payment, to bear interest at the rate of
eight per cent. per annum from maturity until paid.   In accordance with the
original act of sale from the State of Louisiana, the purchasers are to
have the privilege of exchanging their notes at any time, for any of the
bonds of the State of a similar amount, which fall due on the 21st of March,
1872.

Acts of sale before P. W. Roberts, notary public, at the expense of the pur-
chaser."

The *proces verbal* states, that *Michael Gernon* being the highest and last
bidder for the property, it was adjudicated to him for the price and sum of

8

$15,609. Then follow the terms of sale, *verbatim*, as stated in the advertisement.

From the deed of sale to *Burke*, it appears that he bought the property from the State of Louisiana, in May, 1850, for the sum of $6,213 98, payable 21st of March, 1872, with five per cent. interest, payable semi-annually, for which forty-four interest notes were given; all of which notes were to bear interest after maturity, at eight per cent.

The syndic claims that the purchaser is bound, under the adjudication, to give his notes for $15,600, at 6, 12, 18, and 24 months from the date of adjudication, and in addition thereto, to assume the payment of *Burke's* mortgage.

The purchaser contends, that he is bound to give his notes only for the balance of $15,600, the amount bid, after deducting therefrom the amount of all the mortgage notes given by *Burke* and mentioned in the advertisement.

Let us examine these propositions in their order, and inquire whether either of them can be considered as clearly so understood at the time of the sale by the party against whom such construction is invoked.

I. We are not satisfied, from a consideration of the advertisement and what is stated in the *proces verbal*, that *Gernon* really intended to give $15,600 for this property, over and above the mortgage to the State. The terms used in the advertisement, do not expressly indicate, nor necessarily imply such a meaning, and the bid was fifteen thousand six hundred dollars, which the *proces verbal* speaks of as "the price." If we look, for the purpose of analogy, at the practice in the case of Sheriff's sales as regulated by the Code of Practice, and which, from its every day recurrence, may well have been present in the mind of the purchaser, we find that the bid is considered a bid for the total value of the property; and where there are antecedent mortgages, the condition is, that the purchaser shall pay the Sheriff that portion of the price for which the property is adjudicated, which is the excess over such incumbrances. See C. P. 679.

II. When we consider the construction which the purchaser invokes, the language of the advertisement does not authorize us to say, the syndic so understood the matter. Admitting it is consonant to usage, to treat the bid as a bid for the value of the property, from which antecedent incumbrances are to be deducted, we know no precedent for the proposition that unaccrued interest is to be cumulated with the capital and deducted in like manner from the bill. The unreasonableness of admitting such a proposition, unless sanctioned by clear and unmistakable language in the advertisement, is peculiarly obvious in the present case, where the interest runs through a period of twenty years. We believe the practice in Sheriff's sales has been to disregard unaccrued interest in deducting a mortgage from the purchaser's bid, and this seems an equitable and practical view of the matter, upon the theory that the use of the property, after the purchase, will be an equivalent for what the purchaser has to pay the creditor for the retention of the capital during the stipulated delay. See also 1 Robinson, 306. The circumstance that notes were given for the interest, does not seem to us to distinguish the case, in principle, from one where a note or obligation bearing annual interest is given for the price.

Our conclusion is, that neither construction received the assent or meets the intention of both parties, and therefore that the relief asked by the plaintiff in his rule, and by the syndic in his answer, was properly refused.

Nor can we deduce from the language of the advertisement and *proces verbal*, any other mode of applying the bid, which could be considered as meeting with certainty, a mutual intention and consent, without the existence of which a specific performance should not be enforced. The condition of the estate as to incumbrances, was complicated by the fact, that some of the interest notes, bearing eight per cent. interest after maturity, were due before the sale, and this fact seems to have been overlooked in framing the advertisement. Whatever equity there might be in considering the use of the property by the purchaser after his purchase, as an equivalent for interest afterwards maturing, there would be none in requiring him to pay interest which had matured before the sale without giving him credit for it on the amount of his bid, unless he was distinctly warned by the advertisement, that such was to be the condition of the sale. Moreover, the property was originally mortgaged to the State, to secure forty-three interest notes of $155 35, and the advertisement and *proces verbal* speak of forty-two interest notes of that amount, without specifying which they are. This was important, because they bore eight per cent. interest after maturity, and the date of maturity was not described, although several had fallen due.

In sales under execution upon twelve months bonds, where there are anterior incumbrances, Article 683 of the Code of Practice, requires the Sheriff to announce, (and this, as we understand, before the crying,) "that the purchaser shall be entitled to retain in his hands, out of the price for which the property was adjudicated, the amount required to satisfy the privileged debts and special hypothecations to which the property sold was subject; but that he shall be bound to give his obligation for the surplus of the purchase money, if there be any, and subscribe his obligation at twenty months' credit, with security;" and when the sale is for cash, there is a like announcement required upon the crying. Art. 679 C. P. The object of these provisions seems to be to explain to the purchaser how his bid is to be applied.

No such announcement, so far as we are informed, was made by the auctioneer in this case. This omission contributes to the uncertainty as to the intention of the purchaser.

It would be inequitable to decree a specific performance, where the intention of the parties is doubtful. A Court is not permitted to make such a decree on conjecture; and where it finds no certain contract, it has no right to frame one for the parties *ex æquo et bono.*

Judgment affirmed; the costs of appeal to be paid by the appellants.